UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X


JAVIER CENTENO,

                        Petitioner,

         -against-

DAVID L. MILLER,                              03 Civ. 3861 (KMW)(THK)
                                              OPINION AND ORDER
                        Respondent.


-----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

     Pro se Petitioner Javier Centeno ("Petitioner") brings this

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

(See Amended Habeas Corpus Petition, dated July 18, 2006, No. 03

Civ. 3861, D.E. 19 (the "Petition").) Petitioner challenges his

1999 conviction in New York State Supreme Court, Bronx County,

for Manslaughter in the First Degree, Assault in the First

Degree, and Criminal Possession of a Weapon in the Second Degree.

     Petitioner asserts six claims in the Petition.  (See

Petition, at 7-8.)[1]  Petitioner argues that: (1) the prosecution

failed to disprove his justification defense beyond a reasonable

doubt (Claim 1); (2) the trial court erred by responding to the

_____

     [1]    Petitioner actually lists seven claims, which he labels
"Points" in the Petition; the Court has consolidated Points IV
and V into Claim 4 in this Opinion. (See Pet. 7-8.)

1

jury's note indicating that the jury was deadlocked when it discussed the legal standard for proving intent, but failed to restate the elements of justification (Claim 2); (3) Petitioner's sentence was harsh and excessive (Claim 3); (4) the prosecution misled the trial court about the nature of its plea agreement with a key witness, and failed to disclose information about the arrest of this witness for the same crimes with which Petitioner was charged (Claim 4); (5) Petitioner received ineffective assistance of trial counsel (Claim 5); and (6) Petitioner received ineffective assistance of appellate counsel (Claim 6). (See id.)

The Court referred this Petition to Magistrate Judge Theodore H. Katz for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On August 17, 2007, Magistrate Judge Katz issued a Report and Recommendation (the "Report"), familiarity with which is assumed. (See D.E. 30.) The Report recommended that the Court deny the Petition.

Petitioner filed timely objections to the Report's recommendations relating to Claims 5 and 6. (See Objection to Report and Recommendation, dated October 22, 2007, D.E. 35 ("Pet.'s Objection"), at 3-4, 10-11, 20.) Accordingly, the Court

2

reviews Claims 5 and 6 de novo.[2]

Petitioner states that he does not object to the Report's recommendation that Claims 1-4 be dismissed.  (See Pet.'s Objection 2-3.)  The Court, therefore, reviews the Report's conclusions with respect to Claims 1-4 only for clear error.

For the reasons stated below, the Court adopts the Report's recommendations and DENIES the writ of habeas corpus.

I.   Background[3]

Petitioner was convicted on April 8, 1999, following a jury trial, of (1) Manslaughter in the First Degree, (2) Assault in the First Degree, and (3) Criminal Possession of a Weapon in the Second Degree.  He was sentenced by the trial judge on May 6, 1999, to consecutive indeterminate terms of imprisonment of (1) twelve and one-half to twenty-five years for his manslaughter conviction, and (2) seven and one-half to fifteen years for his assault conviction.  The trial judge ordered that these terms

---

[2]    The Court construes Petitioner's objections liberally because he proceeds as a pro se applicant.  See Boykin v. Keycorp, 521 F.3d 202, 214 (2d Cir. 2008)("A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)(internal quotation marks omitted)).

[3]    The background section is drawn from the Report.  (See Report 1.)

were to run concurrently with a seven and one-half to fifteen

year sentence for the weapons possession conviction.

II.  Discussion

    A.  Standard of Review of a Magistrate's Report

Any party may file and serve written objections within ten

days after being served with a copy of a magistrate judge's

report.  See 28 U.S.C. § 636(b)(1)(C).  The district court makes

a de novo determination of the specific portions of a magistrate

judge's report  to which a party has raised timely objections.

See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  The

district court may "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate

judge."  See 28 U.S.C. § 636(b)(1)(C).

If neither party makes a timely objection to the

magistrate's report, the district court "need only satisfy itself

that there is no clear error on the face of the record."  Brito

v. Phillips, 485 F. Supp. 2d 357, 360 (S.D.N.Y. 2007)(internal

citations and quotations omitted); accord Wilds v. United Parcel

Serv.,Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

    B.  Standard of Review of a Habeas Petition

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") provides that a federal court may hear a petition for

habeas corpus "only on the ground that [a person] is in custody

in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

Under the AEDPA, a federal court may grant a petition for habeas relief to a person who is in custody as a result of a judgment of a state court on any claim that has been adjudicated on the merits in state court, only if that adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2).

While AEDPA's deferential standard applies only to claims that have been "adjudicated on the merits in State court proceedings," the Second Circuit "give[s] a broad reading to state court dispositions."   See Eze v. Senkowski, 321 F.3d 110, 121-122 (2d Cir. 2003)(internal quotations and citation omitted). Indeed, "the 'state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment.  No further articulation of its rationale or elucidation of its reasoning process is required.'"   Id. at 122 (quoting Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).

Moreover, "an issue may be considered to be adjudicated on its merits even when the state court does not specifically mention the claim but uses general language referable to the merits." Eze, 321 F.3d at 122 (internal citation and quotations omitted).

A state court's decision is "contrary" to clearly established federal law, as determined by Supreme Court precedent, "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law," or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." See Williams v. Taylor, 529 U.S. 362, 405 (2000).

C.    The Uncontested Claims

In a timely objection to the Report, Petitioner states that he accepts the Report's recommendation that Claims 1-4 should be dismissed. (See Pet.'s Objection 2-3.)  The Court, therefore, reviews the Report's recommendations with respect to Claims 1-4 only for clear error.  The Court, after having reviewed the Report, notes that the Report is very thorough and well-reasoned in its consideration of both the factual record and the legal issues raised in the Petition.  The Court has found no clear error in either the Report's analysis or its conclusions. Therefore, the Court adopts the Report's conclusion that Claims

1-4 lack merit.  See Eisenberg v. New England Motor Freight,

Inc., 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008)("A district court

evaluating a Magistrate Judge's report and recommendation may

adopt those [uncontested] portions . . . as long as the factual

and legal bases supporting [its] findings and conclusions . . .

are not clearly erroneous or contrary to law.").

Accordingly, Claims 1-4 are dismissed.

D.    The Contested Claims

Petitioner objects to the Report's recommendation that the

Ineffective Assistance of Trial Counsel Claim (Claim 5) and the

Ineffective Assistance of Appellate Counsel Claim (Claim 6)

should be dismissed.  (See Pet.'s Objection 11,20, D.E. 35.)  The

Court, therefore, performs de novo review of Claims 5 and 6.

Claims 5 and 6 have been adjudicated on the merits in state

court.[4]   Accordingly, the Court reviews Claims 5 and 6 pursuant

---

[4]    Petitioner previously raised both claims of ineffective
assistance of counsel in the Appellate Division of the Supreme
Court of the State of New York State; and the Court of Appeals
subsequently denied leave to appeal the rejection of these
claims.  The Ineffective Assistance of Counsel Claim was raised
in Petitioner's § 440.10 Motion to Vacate Judgment.  (See
Affidavit of Christopher J. Blira-Koessler in Opposition to
Petition for Habeas Corpus, dated Feb. 1, 2007, D.E. 25 ("Blira-
Koessler Aff."), Ex. 4 (§ 440.10 Motion to Vacate Judgment); Ind.
No. 4436/96, dated Feb. 4, 2004 (Denial of § 440.10 Motion),
Blira-Koessler Aff. Ex. 7; People v. Centeno, Ind. No. 4436/96,
(Certificate Denying Leave), dated May 20, 2004, Blira-Koessler
Aff. Ex. 10.)  The Ineffective Assistance of Appellate Counsel
Claim was raised in Petitioner's Motion for a Writ of Error Coram

to the deferential standard of 28 U.S.C. § 2254(d).  See

Aparicio, 269 F.3d at 94.

    The Court concludes that the Appellate Division's rejection

of Claims 5 and 6 was neither "'contrary to,'" nor "'an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States.'"  See

Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000)(quoting 28

U.S.C.A. 2254(d)(1)).  Petitioner, therefore, has failed to raise

a colorable federal claim in either instance.

    After de novo review, the Court finds that Claims 5 and 6

both lack merit.  The Court, therefore, adopts the Report's

conclusion that Claims 5 and 6 should be dismissed.

        1.    Ineffective Assistance of Counsel Claim

        a.    Legal Standard

    A habeas petitioner who asserts a claim of ineffective

assistance of counsel must demonstrate that: (1) his attorney's

performance "fell below an objective standard of reasonableness,"

and (2) "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding

would have been different."  Strickland v. Washington, 466 U.S.

_____

Nobis.  (See Blira-Koessler Aff. Ex. 11; People v. Centeno, Ind.
No. 4436/96, dated April 18, 2006 (denying the writ), Blira-
Koessler Aff. Ex. 13; People v. Centeno,7 N.Y.3d 753 (2006)
(Certificate Denying Leave), Blira-Koessler Aff. Ex. 14.)

668, 687-88, 694 (1984).  A court need not "approach the inquiry in the same order or even [] address both components" if the defendant fails to meet either prong of this test.  Id. at 697; accord Edmonson v. Artus, No. 04 Civ. 5477 (ARR), 2006 WL 3486769, at *13 (E.D.N.Y. Nov. 30, 2006)("A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one.").

In addition to satisfying both prongs of the Strickland test, Petitioner "must also show that the Appellate Division applied Strickland to the facts of his case in an objectively unreasonable manner."  See Eze, 321 F.3d at 124 (noting that "AEDPA adds another hurdle in addition to the already heavy burden [an appellant] faces under Strickland. . . . To prevail, [a habeas petitioner] must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." (internal quotations and citations omitted)).

b.   Analysis

Petitioner argues that he was deprived of effective assistance of trial counsel because his attorney, Joseph P. Carroza, failed to impeach a key prosecution trial witness, Tommy

Rivera, by questioning him about (1) his initial arrest for the
same crime for which Petitioner was charged, and the (2)
circumstances surrounding his cooperation agreement with the
government.[5]  (Pet.'s Objection 5, 9; Report 2, 14.)

Petitioner contends that "Rivera's lack of credibility was
central to the Defense," and that Mr. Carrozza "failed to
introduce uncontradicted evidence that: (1) Rivera was arrested
and initially charged as second perpetrator for this crime; (2)
that two eyewitnesses put a gun in Rivera's hand; and (3) that
Rivera perjured himself."[6]  (Pet.'s Objection 9.)

The Court notes that the jury was made aware during the
People's direct questioning of Mr. Rivera that he had been

_____

[5]      In Claim 5, Petitioner also asserts that counsel failed
to object to alleged Molineux and Due Process violations
committed by the prosecutor.  (See Pet. 8.)  Petitioner does not
object to the Report's recommendation that these claims be
dismissed.  Therefore, the Court reviews these claims for clear
error pursuant to 28 U.S.C. § 636(b)(1)(C).  The Court finds no
clear error in the Report's analysis that Petitioner has failed
to demonstrate that his counsel's conduct was unreasonable.
Accordingly, the Court adopts the Report's conclusion that the
alleged Molineux and Due Process violations claims included
within Claim 5 lack merit.  (See Report 44-47.)

[6]      Petitioner refers to a "Decline Prosecution Report" in
the Petition.  (See Pet. 7.)  According to Respondent, the
"'Decline Prosecution Report' is actually a printout of this
Office's computerized case tracking system."  (See Blira-Koessler
Aff. Ex. 6, ¶ 13.)  Respondent states that the document
"indicates that Thomas Rivera was also arrested for the crime for
which defendant was ultimately convicted, but that this Office
did not prosecute Mr. Rivera for murder."  (Id.)

"promise[d]" not to be charged with gun possession in exchange

for testifying at trial, and that the United States Attorney

would be informed of his cooperation.  (See Blira-Koessler Aff.

Ex. 5, Pet.'s Ex. G at 476.)  As Mr. Carrozza states:

> I did not ask Thomas Rivera about his arrest
> for murder because it would have been
> improper to ask this question, particularly
> in light of the fact that the Office of the
> Bronx County District Attorney declined to
> prosecute him for murder.  An arrest is
> merely an accusation, and is evidence of
> nothing.  I focused my cross-examination on
> permissible topics, such as Mr. Rivera's
> criminal convictions for bad acts, and
> cooperation with the prosecution.

(See Blira-Koessler Aff., Affidavit of Joseph P. Carrozza, Esq.,

dated Jan. 24, 2007, Ex. 16 ("Carrozza Aff."), ¶ 4.)

Indeed, there is no evidence that the District Attorney ever

contemplated charging Mr. Rivera with murder.  Respondent

concedes that Mr. Rivera was also arrested for murder but states

that the Bronx District Attorney did not agree to forego

prosecuting Mr. Rivera for murder in exchange for Mr. Rivera

testifying against Petitioner.  (Resp't's Mem. at 36-37.)

Respondent reports that the District Attorney's Office decided

not to prosecute Mr. Rivera for the shooting and killing of

Reynaldo Dalmau and the shooting and wounding of Raynes Tirado

because the evidence indicated that Petitioner, not Mr. Rivera,

shot the two victims.  (Resp't's Mem. at 37.)

11

Petitioner has failed to demonstrate that Mr. Carrozza's strategic decision not to question Mr. Rivera about his arrest for murder was unreasonable.  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  Strickland, 466 U.S. at 689.  Courts afford great deference to counsel's strategic decisions and these "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  Id. at 690; see Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002)("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim." (internal quotations and citations omitted)).  Petitioner, therefore, fails to meet the first prong of the Strickland test.

The Court notes that even if Mr. Carrozza's failure to question Mr. Rivera about his role in the shootings and his cooperation agreement "fell below an objective standard of reasonableness," Petitioner still has not met his burden of establishing that there is a "reasonable probability" that such error altered the trial's outcome, as required under the second prong of Strickland.

Petitioner never denied shooting the two victims; the

12

cornerstone of the defense strategy was that Petitioner's acts

were justified.  (See Report 44; Pet.'s Objection 7-9.)  Even if

Mr. Rivera's testimony were not believed, there remained

sufficient evidence for a reasonable jury to conclude that

Petitioner was not entitled to claim justification as a defense.

Indeed, evidence was adduced at trial that Petitioner continued

to shoot at his victims while they lay bleeding on the ground

after they dropped their weapons.  (See Report 22-23.)  As noted

by the Appellate Division:

> The verdict was based on legally sufficient
> evidence and was not against the weight of
> the evidence.  The People disproved
> defendant's justification defense beyond a
> reasonable doubt.  The evidence established,
> regardless of whether defendant was initially
> justified in using deadly physical force,
> such justification no longer existed when
> defendant shot his victims while they were
> unarmed and on the ground.

People v. Centano, 291 A.D.2d 265, 266, 2002 N.Y. Slip Op. 01230

(1st Dep't 2002), lv. denied 98 N.Y.2d 649.

In a habeas proceeding, a state court's factual

determinations are "presumed to be correct," and an applicant who

challenges such determinations "shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C.A.  § 2254(e)(1); see White v. Fischer, No.

04 Civ. 5358 (GBD)(FM), 2008 WL 4210478, at *7 (S.D.N.Y. Sept.

12, 2008).  Petitioner has failed to rebut the jury's

determination that the prosecution's witnesses presented credible

testimony that undermined Petitioner's justification defense. (See Report 22, 24.)

The Court, after de novo review, adopts the Report's conclusion that Petitioner fails to meet either prong of the Strickland test.  Accordingly, the claim of ineffective assistance of trial counsel is dismissed.

### 2.   Ineffective Assistance of Appellate Counsel

#### a.   Legal Standard

Petitioner must satisfy the two-prong Strickland test in his claim of ineffective assistance of appellate counsel.  See Clark, 214 F.3d at 321.  Under the first, objective reasonableness prong of Strickland, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not obligated to advance every nonfrivolous argument that could be made."  Aparicio, 269 F.3d at 95.  Instead, "[P]etitioner may establish constitutionally inadequate performance" by appellate counsel by demonstrating "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  See v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). , 214 F.3d at 322.

To satisfy Strickland's "second, prejudice prong, the defendant must show . . . a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'"  Aparicio, 269 F.3d at 95 (quoting Strickland, 466

U.S. at 694). "A reasonable probability is one sufficient to undermine confidence" in the appeal's outcome. Id.

The Court again reviews this claim under the deferential standard accorded by the AEDPA to claims that have already been adjudicated by the state court.[7]

### b.  Analysis

Petitioner argues that he was deprived of effective assistance of appellate counsel because his attorney, Cynthia Feathers, failed to raise "the meritorious claim" that the trial court was precluded under New York Penal Law § 70.25(2) from imposing consecutive sentences for his manslaughter and assault convictions, and therefore, his consecutive sentences were "illegally imposed."  (See Pet.'s Objection 12-13; Report 47.) His counsel was not ineffective, because the trial judge was justified in imposing consecutive sentences.

Petitioner's argument rests upon his contention that his criminal acts (shooting at Dalmau and assaulting Tirado) were part of the same criminal transaction, and were not "separate and discrete acts" for which consecutive sentences could be imposed. He states that he should "have only been faulted for the offense against Dalmau [the manslaughter victim]," (see Pet.'s Objection

---

[7]     Petitioner raised a claim of ineffective assistance of appellate counsel in his coram nobis petition that was based upon the identical argument that he presents in Claim 6 of the current Petition.  (See Blira-Koessler Aff. Ex. 11.)

15.) and that (as he testified at trial) he did not intend to
shoot at the assault victim.  According to New York Law,
consecutive sentences may be imposed for the manslaughter and
assault offenses only if each offense constituted a separate and
distinct act.

In this case, Petitioner admits that he fired at least "four
or five shots" at Mr. Dalmau.  (See Pet.'s Objection 14.)
Although Petitioner claims that he "never directed any of these
multiple shots toward Tirado [the assault victim]," (see id.),
witnesses testified that after Dalmau and Tirado fell to the
ground, Petitioner continued shooting at them separately.  (See
Report 51; Blira-Koessler Aff. 5.)  The jury could reasonably
infer from this testimony that Petitioner intentionally fired at
each of the two victims.  The firing of multiple shots that wound
and kill separate victims are viewed as separate and distinct
acts that are punishable by consecutive sentences if a defendant
intended to shoot both victims.  See People v. McGill, 13 Misc.
3d 1207(A), 824 N.Y.S.2d 757, 2006 N.Y. Slip Op. 51715(U), at *2
(N.Y. Sup. July 12, 2006).

Although Petitioner claims that he did not intend to shoot
at both victims, the jury acted within its discretion as
factfinder when it credited the testimony of the prosecution's
witnesses over that of the Petitioner, and found such evidence
sufficient to conclude that Petitioner intentionally fired

separate shots at the two victims.  "[T]he testimony of one witness can be enough to support a conviction . . . [and] it is typically the province of the jury to determine a witness's credibility."  People v. Calabria, 3 N.Y.3d 80, 82 (2004).  "[Q]uestions of credibility are quintessentially matters for the jury, and do not raise constitutional issues of sufficiency for resolution by a habeas court.  A habeas court is 'not free to second-guess . . . credibility judgments' made by the jury."  Peterson v. Greene, No. 06 Civ. 41 (GEL), 2008 WL 2464273,  at *6 (S.D.N.Y. Jun. 18, 2008)(quoting Taylor v. Curry, 708 F.2d 886, 892 (2d Cir. 1983).

The Court finds that the jury had a valid basis for concluding that Petitioner committed separate and distinct by firing multiple shots at the two victims.  As a result, Petitioner's appellate counsel was not ineffective for failing to raise the meritless argument that the trial court illegally imposed consecutive sentences for the manslaughter and assault offenses.  See Aparicio, 269 F.3d at 100.  Therefore, Petitioner fails to meet the first prong of Strickland.

Petitioner also cannot show a "reasonable probability" that his appellate counsel's failure to challenge the consecutive sentences altered the appeal's outcome, as required under the second prong of Strickland.

Petitioner has failed to produce any credible evidence in

support of his contention that his "consecutive sentences were

illegally imposed" under New York Penal Law § 70.25(2).[8]  (See

Pet.'s Objection 12.)  The Court concludes that the New York

courts would in all probability have rejected a challenge to the

trial court's imposition of consecutive sentences.  See Mosby v.

Senkowki, 470 F.3d 515, 523 (2d Cir. 2006).  Therefore,

Petitioner cannot show a reasonable probability that "his

appellate counsel's failure to raise the issue did not render the

proceeding unreliable or unfair. . . . As a result, [Petitioner]

cannot establish prejudice under the second prong of Strickland."

See id. at 525.

    The Court, after de novo review, adopts the Report's

conclusion that Petitioner fails to meet either prong of the

Strickland test.  Accordingly, the claim of ineffective

assistance of appellate counsel is dismissed.

III. Conclusion

    For the reasons set forth above, the Court denies the writ

of habeas corpus and the Petition is dismissed.  A certificate of

appealability will not issue because Petitioner has not made a

substantial showing of the denial of a constitutional right.  See

---

    [8]    Indeed, the only evidence that Petitioner has produced
to challenge the trial court's determination that he committed
separate and distinct acts was his own uncorroborated trial
testimony, which "suffer[s] from being highly "self-serving."
See Rega v. United States, 263 F.3d 18, 25 (2d Cir. 2001); see
also Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003)(noting the
"simple recognition that in most circumstances a convicted
felon's self-serving testimony is not likely to be credible.").

19

28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  The Clerk of Court is directed to close this case; any pending motions are moot.

        SO ORDERED.

DATED:     New York, New York
            March 30 , 2009

                              KIMBA M. WOOD
                      United States District Judge

19